UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANE VALENTINE,

        Plaintiff,

        v.

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation

        Defendant.
_____

Civil No. 06-1012-HA

ORDER
AND OPINION

HAGGERTY, Chief Judge:

      Plaintiff alleges that his former employer, defendant Portland General Electric Company (PGE), discriminated and retaliated against him in violation of 42 U.S.C. § 2000e *et seq.* (Title VII), O.R.S. 659A.030, and 42 U.S.C. § 1981. Plaintiff also asserts a state claim for wrongful discharge.

PAGE 1 - OPINION AND ORDER

Defendant filed a Motion for Summary Judgment [20] and oral argument was heard on November 19, 2007. For the following reasons, defendant's motion is granted in part, and denied in part.

Defendant also moves to strike plaintiff's Statement of Facts included in his Memorandum in Opposition to Defendant's Motion for Summary Judgment [28]. However, by failing to confer with plaintiff, defendant did not follow the requirements of Local Rule 7.1(a)(1) ("Except for motions for temporary restraining orders, the first paragraph of every motion must certify that . . . [t]he parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so.). Therefore, defendant's motion to strike is denied.

## I.    BACKGROUND

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff.

Plaintiff, a Caucasian man with Native American ancestry, was employed by defendant from July 31, 2002, to October 21, 2005 as a Data Center Operations Technician III ("DCO Tech"). Defendant's Concise Statement of Material Facts ("Def. Facts") ¶ 1-3. In July 2004, plaintiff voluntarily transferred from swing shift to day shift. Def. Facts ¶ 3. His new shift partner was Sharon Atrops ("Atrops"). *Id.* Plaintiff and Atrops' immediate supervisor was Patrick Campbell ("Campbell"). Campbell made the decision to hire and fire plaintiff. Def. Facts ¶ 4.

PGE's employment policy is in its employee handbook. Def. Facts. ¶ 6. That policy can be modified by managers of each department. *Id.* Campbell required that if a DCO Tech was

going to miss work due to illness, he or she must orally notify their shift partner prior to the start of their shift. *Id.* Plaintiff alleges that Campbell only required a call prior to the start of the shift if the employee was able to call. Plantiff's Concise Statement of Material Facts ("Pl. Facts") ¶ 6. To schedule Personal Time Off ("PTO"), a DCO Tech was required to consult with his or her shift partner, and then request approval from Campbell. *Id.*

In April or May 2004, plaintiff began to complain to Campbell about Atrops' work. Pl. Facts. ¶ 22. On July 26, 2004, plaintiff and Atrops performed, as part of their job duties, a usage search of a PGE server. Def. Facts ¶ 7. Plaintiff asserts that he objected to having to look for pornography as part of the server search. Pl. Facts ¶ 22. In November 2004, plaintiff alleges that Atrops commented about the pornography that had been discovered and commented that "she likes to give blow jobs." *Id.* Plaintiff alleges that he complained to Campbell about Atrops' comment. In January 2005, Campbell gave plaintiff a performance rating of 3, lower than his last performance rating. *Id.* Later that month Campbell held a meeting with Atrops and plaintiff to discuss their communication problems. Pl. Facts ¶ 24.

In May 2005, plaintiff informed Campbell that he suffered from a liver condition. Pl. Facts. ¶ 26. In response, plaintiff alleges that Campbell asked him if he used cocaine, because "your people" do that sort of stuff and that might be why plaintiff had the condition. *Id.* Plaintiff asserts that he objected to Campbell's use of "your people." *Id.*

In June 2005, plaintiff alleges that Atrops brushed up against him and touched his buttocks. Pl. Facts. ¶ 28. Plaintiff alleges that he reported to Campbell that he believed Atrops had touched him in an inappropriate manner. *Id.* Shortly thereafter, on June 29, 2005, Campbell gave plaintiff and Atrops formal written warnings for not communicating with each other as

expected, and for not following the leave and attendance policies. Def. Facts ¶ 10; Pl. Facts ¶ 28. Later that summer, plaintiff alleges that Atrops again touched plaintiff inappropriately. Pl. Facts. ¶ 30. Plaintiff alleges that he complained to Campbell, and informed him that he would like to take his complaints to human resources, BOLI, or the EEOC. *Id.*

In September 2005, plaintiff alleges that Campbell asked plaintiff if his brother "was Hawaiian too." Pl. Facts. ¶ 32. Plaintiff responded that he and his brother were Caucasian not Hawaiian. *Id.* Plaintiff alleges that Campbell responded, "well you're the darkest Caucasian I've ever seen." *Id.*

On September 20, 2005, Atrops did not contact plaintiff prior to her shift to notify him that she was sick; she was reprimanded, but no formal disciplinary action was taken. Def. Facts ¶ 11; Pl. Facts ¶¶ 11, 34. Campbell met with plaintiff several times to discuss his failure to follow the leave policies. Def. Facts. ¶ 12. Plaintiff alleges that he told Campbell at these meetings that he had informed Atrops of his absence, as per the policy, but that Atrops had lied about it to Campbell. Pl. Facts. ¶ 12. On September 23, 2005, plaintiff took the day off to take his dog to the veterinarian. Pl. Facts. ¶ 13. Plaintiff claims that he followed the PTO policy, *id.*, while defendant alleges that plaintiff did not. Def. Facts. ¶ 13. On September 27, 2005, Campbell placed plaintiff on Decision-Making Leave ("DML") for not following the leave and attendance policies. Def. Facts ¶ 14. Campbell had previously warned plaintiff that he could be placed on DML. *Id.*

Plaintiff met with a human resources consultant and informed her that he felt discriminated against, harassed, that his complaints were not being addressed, and that Campbell was retaliating against him. Pl. Facts. ¶ 36. On September 29, 2005, plaintiff submitted a written response to the DML in which he agreed to call in prior to his shift if he was going to be

PAGE 4 - OPINION AND ORDER

absent or late due to illness. Def. Facts ¶ 15. In October, plaintiff notified Campbell again that he was considering contacting the EEOC and BOLI. Pl. Facts. ¶ 40.

On October 19, 2005, plaintiff called in at 6:00 or 6:02, to inform Atrops and Campbell that he was sick. Pl. Facts ¶ 41; Def. Facts ¶ 16. Plaintiff's shift was scheduled to begin at 6:00. Pl. Facts ¶ 41. On October 21, 2005, Campbell terminated plaintiff's employment for failing to follow the DML, which required that he call prior to his shift. Def. Facts. ¶ 17.

After plaintiff's termination, Campbell informed human resources that plaintiff, based on visual observation, was of Pacific Islander descent, and that plaintiff had shared this with his co-workers. Pl. Facts. ¶ 49.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

PAGE 5 - OPINION AND ORDER

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

### B. Discussion

#### 1. Disparate Treatment Claims

Plaintiff alleges that he was discriminated against based on his race[1] and gender, in violation of Title VII, O.R.S. 659A.030,[2] and 42 U.S.C. § 1981. For claims of disparate treatment based on race or gender a plaintiff must first present a prima facie case of discrimination, which creates a presumption of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996).

To establish a prima facie case, plaintiff must demonstrate that: (1) plaintiff is a member of a protected class, (2) plaintiff was performing his or her job according to his employer's legitimate expectations, (3) plaintiff was subject to an adverse employment action, and (4) similarly situated persons outside of his or her protected class were treated more favorably. *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

---

[1] Plaintiff alleges that defendant discriminated against him based on Campbell's perception of plaintiff as a Pacific Islander, although plaintiff asserts that he is Caucasian.

[2] Employment discrimination claims brought in federal court under O.R.S. Chapter 659A are analyzed under the same framework used to analyze disparate treatment claims under federal law. *Williams v. Fed. Ex. Corp.*, 211 F. Supp. 2d 1257, 1261 (D. Or. 2002).

PAGE 6 - OPINION AND ORDER

If plaintiff makes a prima facie case, the burden of production then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1123-24. If the employer meets this burden of production, "the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1124 (internal quotations omitted).

Plaintiff's disparate treatment claims fail because he cannot make the requisite prima facie showing. Plaintiff has not demonstrated that he was performing his job according to his employer's legitimate expectations. Plaintiff relies solely on the length of his employment with defendant, as well as his own opinion that he was performing satisfactorily. While plaintiff's subjective opinion regarding his performance is relevant to the prima facie determination, *see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), it is not enough to raise a genuine issue of material fact. The record is replete with instances of plaintiff not complying with defendant's attendance policy. Def. Facts ¶¶ 10, 12, 14-17; Pl. Facts. ¶¶ 35, 38, 41. The only evidence plaintiff offers in opposition is his own opinion that he was complying with those policies, or at least as complying to the same degree as similarly situated employees.

Even if the court were to find that plaintiff has made a prima facie case, defendant has asserted a legitimate, non-discriminatory reason for his termination, and plaintiff has not shown sufficient evidence of pretext. As discussed above, defendant disciplined and ultimately terminated plaintiff because of his failure to comply with the leave and attendance policies. *See Leisek v. Brightwood Corp.*, 278 F.3d 895, 899-900 (9th Cir. 2002) (unexcused absences generally are sufficient grounds for termination unless some overriding factor exists).

PAGE 7 - OPINION AND ORDER

Plaintiff produced no meaningful evidence indicating either that defendant's proffered explanation was false or that his supervisor harbored discriminatory animus toward him because of his race or gender.  To avoid summary judgment, plaintiff must "do more than establish a prima facie case and deny the credibility of defendant's witnesses."  *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996)   He must produce "specific, substantial evidence of pretext."  *Id.*  Plaintiff relies on his subjective opinion that Campbell was acting with discriminatory animus, without any corroborating evidence.  *See S.E.C. v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007) (holding that a court may disregard self-serving declarations for purposes of summary judgment when the declaration states only conclusions outside of the personal knowledge of the declarant); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (explaining that the court "has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving").  Further, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive."  *Bradley*, 104 F.3d at 270-71.  Here, Campbell hired plaintiff in July 2003, allowed plaintiff's transfer to the day shift in July 2004, and terminated plaintiff in July 2005.  The fact that Campbell made the decision to both hire and fire plaintiff weighs against an inference of pretext.

Without evidence establishing satisfactory performance, plaintiff has not made a prima facie showing of unlawful discrimination.  Further, defendant has offered a legitimate, non-discriminatory reason for the adverse employment actions, and plaintiff is unable to meet the ultimate burden of persuasion as to pretext.  Therefore, the court grants defendant's motion as to plaintiff's disparate treatment claims for race and gender discrimination under Title VII, O.R.S. 659A and 42 U.S.C. § 1981.

PAGE 8 - OPINION AND ORDER

### 2.    Retaliation Claims

Plaintiff alleges that he was retaliated against for making complaints to Campbell and human resources regarding sexual and racial harassment. To make out a prima facie case of retaliation, plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment action. *Raad v. Fairbanks North Star Borough School District*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Defendant concedes that plaintiff's termination was an adverse employment action, but argues that plaintiff did not engage in any protected activity. Plaintiff has alleged, however, that he made numerous complaints to both Campbell and human resources regarding inappropriate conduct by Atrops. Informal complaints to a supervisor constitute protected activity in a retaliation claim. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000). At summary judgment, the court cannot make credibility determinations, nor can the court require corroboration, as defendant insists. *Phan*, 500 F.3d at 910 (noting "that an affidavit is self-serving bears on its credibility, not on its cognizability for the purposes of establishing a genuine issue of material fact."). Based on the evidence presented to the court at summary judgment, plaintiff has met his burden that he engaged in protected activity.

The court next turns to whether there was a causal link between his protected activity and the employment action. "Causation sufficient to establish . . . [a] prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory activity." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

According to plaintiff, he first complained to Campbell about Atrops' sexual comments in

PAGE 9 - OPINION AND ORDER

November 2004. Pl. Facts ¶ 22. He then complained about a perceived racial comment by Campbell in May 2005. Pl. Facts ¶ 26. He complained about unwanted touching by Atrops twice, once in June 2005, and again in July or August 2005. Pl. Facts ¶¶ 28, 30. In September 2005 plaintiff complained to human resources that he felt he had been discriminated against and harassed, both racially and sexually. Pl. Facts ¶ 36. Plaintiff was terminated in October 2005. Plaintiff's numerous alleged complaints, coupled with the close temporal proximity between his complaints and the disciplinary actions taken against him (including his termination), is enough to establish a causal connection between his protected activity and termination. Therefore, defendant's motion is denied as to plaintiff's retaliation claim.

### 3.    Hostile Work Environment Claims

Plaintiff asserts that defendant subjected him to a sexually and racially hostile work environment. "To make a prima facie case of hostile work environment, plaintiff must show that (1) he was subjected to verbal or physical conduct of a sexual or racial nature; (2) this conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007)  Additionally, the working environment must be both subjectively and objectively perceived as abusive. *Id.* "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.*

Plaintiff's prima facie showing turns on whether or not the alleged actions were pervasive and serious enough to amount to "a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Supreme Court has cautioned that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will

PAGE 10 - OPINION AND ORDER

not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citations and quotations omitted). Here, plaintiff's allegations of harassment are neither sufficiently severe nor pervasive. Plaintiff alleges that defendant intentionally subjected him to sexually offensive material by requiring him to complete a server sweep in which he inadvertently viewed pornography that had been saved on a PGE server. There is no evidence defendant intended for plaintiff to view pornography, nor does plaintiff dispute that searching for unauthorized material on PGE servers was one of his job duties. See Def. Facts ¶ 7; Pl. Facts ¶ 7.

Plaintiff's remaining allegations of a sexually hostile work environment stem from contact with Atrops. First, plaintiff alleges that in November 2004, Atrops commented that "she likes to give blow jobs." Pl. Facts ¶ 22. Plaintiff also alleges that Atrops twice brushed up against him and touched his buttocks during the summer of 2005, which plaintiff reported to Campbell. Def. Facts ¶ 8. These allegations, taken together, are neither sufficiently severe nor pervasive to create a sexually hostile work environment.

Further, viewing the evidence in the light most favorable to plaintiff, the allegations are not objectively hostile. In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted). Plaintiff describes two instances in which Campbell made comments that plaintiff felt were racially hostile. First, plaintiff alleges that in May 2005 he informed Campbell that he had a liver condition. Pl. Facts ¶ 26. In response, plaintiff alleges that Campbell asked plaintiff if he used cocaine, because "your

people" do that sort of stuff. *Id.* In September 2005, Campbell inquired into the racial identity of plaintiff's brother, asking if "he was Hawaiian too?" Plaintiff replied that he was Caucasian, not Hawaiian. Plaintiff alleges that Campbell responded that plaintiff was the darkest Caucasian he had ever seen. Pl. Decl. ¶ 9. Even accepting that plaintiff found these comments to be subjectively hostile, an objectively reasonable person could not find that these comments create a hostile work environment. There is no evidence that these infrequent comments interfered with plaintiff's work performance, or that they were physically threatening or humiliating. *See Nichols*, 256 F.3d at 872. Plaintiff's allegations simply do not rise to the level sufficient for a showing of objective hostility. Accordingly, defendant's motion for summary judgment as to plaintiff's hostile work environment claim is granted.

### 4. Wrongful Discharge Claim

Plaintiff claims that he was wrongfully discharged for complaining about unwelcome sexual conduct and racial comments. Compl. ¶ 6. At the outset, plaintiff's wrongful discharge claim is partially precluded because adequate statutory remedies exist as to plaintiff's race discrimination claim. *See Delaney v. Taco Time Int'l, Inc.*, 681 P.2d 114, 118 (Or. 1984) (holding that where an adequate existing remedy protects the interests of society an additional remedy of wrongful discharge is not available). While courts have held that a wrongful discharge claim brought in conjunction with allegations of sex discrimination under O.R.S. 659A.030 and Title VII is not precluded, plaintiff's claim as to race discrimination is precluded because plaintiff has adequate statutory remedies available under 42 U.S.C. § 1981. *See Lawrence v. Louis & Co.*, 2006 WL 278194, at *1 (D. Or. Feb. 1, 2006); *Williams v. Home Depot U.S.A., Inc.*, No. CV-04-1377-ST, Order on Reconsideration (D. Or. June 6, 2006).

Under Oregon common law, an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. *Patton v. J.C. Penney Co.*, 719 P.2d 854, 856 (Or. 1986). The tort of wrongful discharge is a narrow exception to this general rule. *See Sheets v. Knight*, 779 P.2d 1000, 1006 (Or. 1989). Oregon courts have recognized two circumstances that give rise to this tort: (1) discharge for performing a public duty or fulfilling a societal obligation and (2) discharge for exercising an important job-related right. Examples of the first category include discharge for serving on jury duty, *Nees v. Hocks*, 536 P.2d 512 (Or. 1975); for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 684 P.2d 21 (Or. App. 1984); and for refusing to sign a false and potentially defamatory statement about a coworker, *Delaney v. Taco Time Int'l*, 681 P.2d 114 (Or. 1984). Examples of the second category include discharge for resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck & Co.*, 689 P.2d 1292 (Or. 1984), and for filing a workers' compensation claim, *Brown v. Transcon Lines*, 588 P.2d 1087 (Or. 1978). To prevail in a wrongful discharge case, a plaintiff must show that his protected activity was a "substantial factor" in his termination. *Holien*, 689 P.2d at 1299 n.5.

Plaintiff argues that by complaining about unwanted sexual conduct, he was both exercising an important public or societal obligation and exercising an employment-related right of public interest. An employment-related right is a "personal benefit or right to which the employee is entitled as a matter of public policy." *Brown v. Bd. of Educ.*, 139 P.3d 1048, 1052 (Or. App. 2006). Oregon courts have stated that "sexual harassment on the job is a forbidden discriminatory act under state and federal law and an employee has a legal right which is of important public interest not to be discharged for resisting sexual harassment." *Holien*, 698 P.2d at 1300. Further, "it is not the supervisor's demand, or discriminatory sexual harassment, for

PAGE 13 - OPINION AND ORDER

which plaintiff seeks common law tort damages; it is for a tortious discharge following her rightful resistance to those demands or harassment." *Id.* Here, plaintiff alleges that he complained about unwanted sexual conduct, including sexual comments made by a co-worker, unwanted touching by that co-worker, and for job-related duties that resulted in him viewing pornography on PGE servers. While the court has dismissed plaintiff's claim for hostile work environment because the evidence was not sufficient that the instances of harassment were sufficiently hostile, severe, or pervasive, the court has allowed plaintiff's claim for retaliation because genuine issues of material fact exist as to plaintiff's alleged protected activity. As stated by the court in *Holien*, it is the reporting of such unwanted conduct that gives rise to a claim for wrongful discharge for exercising an employment-related right, not the underlying act of alleged sexual harassment. Because the court finds that plaintiff was exercising an employment-related right of public interest by complaining about unwanted sexual conduct, the court need not reach whether plaintiff was also exercising an important public or societal obligation.

      Even if a wrongful discharge claim is recognized, an employee must show a causal connection between the protected activity engaged in and the discharge. *Shockey v. City of Portland*, 837 P.2d 505, 509-10 (Or. 1992). The Oregon courts apply a substantial-factor test that requires an employee to show the protected activity was a "factor that made a difference" in the discharge decision. *Estes v. Lewis & Clark Coll.*, 954 P.2d 792, 797 (Or. App. 1998). Temporal proximity alone can support a causal inference when there is a short period between the protected activity and the alleged retaliation. *Villiarimo*, 281 F.3d at 1065. As explained above, viewing the evidence in the light most favorable to plaintiff, plaintiff's alleged numerous complaints, coupled with the close temporal proximity between his complaints and his

termination, is enough to establish a causal connection between his protected activity and termination.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [20] is GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to plaintiff's disparate treatment and hostile work environment claims brought pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII), O.R.S. 659A.030, and 42 U.S.C. § 1981.  Defendant's motion is DENIED as to plaintiff's retaliation claim brought pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII), O.R.S. 659A.030, and 42 U.S.C. § 1981 and plaintiff's state wrongful discharge claim.

IT IS SO ORDERED.

DATED this  3  day of December, 2007.

                /s/ Ancer L. Haggerty
                Ancer L. Haggerty
                United States District Judge